Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Eastern District Louisiana

Division

FILED U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2021 JUL -7 A 10:00

CAROL L. MICHEL
CLERK

Erin Carter

_Plaintiff(s)_
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

St. Tammany Parish School Board
St. Tammany Federation of Teachers and School Employees, et al

_Defendant(s)_
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

# 21-01303

# SECT. J MAG. 3

# COMPLAINT FOR A CIVIL CASE

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name — Erin Carter
Street Address — 220 S. Calvin Ave
City and County — Gonzales, Ascension
State and Zip Code — Louisiana 70737
Telephone Number — (225) 450 2877
E-mail Address — erinincluded@gmail.com

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Fee 402.00
Process_____
Dktd_____  Page 1 of 5
CtRmDep_____
Doc. No._____

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

Name                           C. Brandon Harrell

Job or Title *(if known)*      President St. Tammany Parish Sch Bd

Street Address                 321 N. Theard St.

City and County                Covington, St. Tammany

State and Zip Code             Louisiana 70433

Telephone Number               (985) 892 2276

E-mail Address *(if known)*    brandon.harrell@stpsb.org


**Defendant No. 2**

Name                           Brant Osborn

Job or Title *(if known)*      President

Street Address                 19295 N. 3rd St. Suite 8

City and County                Covington, St. Tammany

State and Zip Code             Louisiana 70433 8891

Telephone Number               (985) - 888-1250

E-mail Address *(if known)*    sttamfed@charter.net


**Defendant No. 3**

Name                           Peter Jabbia

Job or Title *(if known)*      Associate Superintendent

Street Address                 321 N. Theard St.

City and County                Covington, St. Tammany

State and Zip Code             Louisiana 70433

Telephone Number               (985) 892 - 2276

E-mail Address *(if known)*    pete.jabbia@stpsb


**Defendant No. 4**

Name                           Michael Cosse

Job or Title *(if known)*      Assistant Superintendent

Street Address                 321 N. Theard St.

City and County                Covington, St. Tammany

State and Zip Code             Louisiana 70433

Telephone Number               (985) 892 - 2276

E-mail Address *(if known)*    michael.cosse@stpsb.org

**II.      Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.      If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*Civil Rights 42 U.S.C. 1981, 1983, 1985, 1986, 1988; Section*

**B.      If the Basis for Jurisdiction Is Diversity of Citizenship**     *301 29 U.S.C. 185*

1.      The Plaintiff(s)

a.      If the plaintiff is an individual

The plaintiff, *(name)* ___Erin CARTER___ , is a citizen of the State of *(name)* ___Louisiana___ .

b.      If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

a.      If the defendant is an individual

The defendant, *(name)* ___Peter Jabba___ , is a citizen of the State of *(name)* ___Louisiana___ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

      b.    If the defendant is a corporation

          The defendant, *(name)* _____ , is incorporated under

          the laws of the State of *(name)* _____ , and has its

          principal place of business in the State of *(name)* _____ .

          Or is incorporated under the laws of *(foreign nation)* _____ ,

          and has its principal place of business in *(name)* _____ .

          *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

     3.    The Amount in Controversy

          The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

          *Civil Rights, State/Fed Law Violations, Retaliation and additional claims. Stake is more than $75,000*

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

          *① Discrimination, Hostile Worker Environment, Harrassment, Retaliation, Breach of Contract*

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

ENHANCE HHC

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

— *Attached Suit* —      — *Additional Damages* —

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    *June 6, 2021*

Signature of Plaintiff    *Erin Carter*

Printed Name of Plaintiff    *Erin Carter*

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

INCREASED ALLEGATIONS AND DISCIPLINE
CONSPIRE – COMMENTS, ABSENCE OF PRINCIPAL, EXTEND TO ATTORNEY

Erin Carter

      Plaintiff,

v.

**St. Tammany Parish School Board**, a municipal corporation of the State of Louisiana; **William "Trey" Folse, III**, individually and in his official capacity as Superintendent of the St. Tammany Parish School Board; and **Peter "Pete" Jabbia**, individually and in his official capacity as Associate Superintendent of St. Tammany Parish School Board; and **Michael Cosse**, individually and in his official capacity as Assistant Superintendent of the St. Tammany Parish School Board; and **Regina Sanford**, individually and in her official capacity as Assistant Superintendent of the St. Tammany Parish School Board; and **Aimee Lemane**, individually and in her official capacity as Assistant Superintendent of the St. Tammany Parish School Board; and Amy T. Burns, individually and in her capacity as Principal of William "Pitcher " Junior High; **St. Tammany Federation of Teachers and School Employees, American Federation of Teachers, Louisiana Federation of Teachers**, a State of Louisiana affiliate of the American Federation of Teachers (hereinafter known as the **"Federation"**); **Deborah "Debbie" Green**, individually and in her official capacity as President of the St. Tammany Federation of Teachers and School Employees; and **Patricia "Trish" Craddock**, individually and in her official capacity as Vice-President of the St. Tammany Federation of Teachers and School Employees.

      Defendants.

## JURY TRIAL DEMANDED

COMPLAINT

      NOW COME Plaintiff, Erin Carter, who respectfully aver and represent as follows:

### JURISDICTION AND VENUE

1.     This is an action brought pursuant to 42 U.S.C. §§ 1981 of the Civil Rights Act of 1866, §1983, § 1985, § 1986, § 1988,  and Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. 185 et seq and the Fourteenth Amendment to the Constitution of the United States as applied to the State of Louisiana and its entities, officials, and employees, as well as the statutes and laws of the State of Louisiana.

2254503799   ENHANCE HHC   11:15:50 p.m.   07-06-2021   7 /53

2.      Venue is proper in the U.S. District Court for the Eastern District of Louisiana, New Orleans

Division, as all acts complained of herein occurred in Covington, St. Tammany Parish, Louisiana.

3.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1391.

4.      Plaintiff seeks compensatory damages, punitive damages, nonpecuniary damages, medical

expenses, lost income, pain, suffering, emotional distress, reputational injury, intentional infliction of

emotional distress "IIED," interest, attorneys' fees, and costs pursuant to 42 U.S.C. § 1988 due to the

malicious acts of all Defendants.

**PARTIES**

5.      Made Plaintiffs herein are:

        A.      Erin Carter.  Self.  Plaintiff Erin Carter is, and at all relevant times was a citizen of the

United States and a resident of Tangipahoa Parish, State of Louisiana and is entitled to bring this action

under Louisiana law and Federal law for all general, special, compensatory, punitive, and

permissible damages.

6.      Made Defendants herein are:

        A.      St. Tammany Parish School Board (hereinafter known as "the Board")

A School District is a body politic and can sue and can be sued in its own name as a political

subdivision of the State of Louisiana.  The boards shall see that the provisions of the state and

federal constitutions, legislative enactments, rules and regulations promulgated by the U.S.

Department of Education and the state board of education, and state school law are complied

with.  The Board shall observe and enforce all applicable provisions of the Constitution and the

Statutes of the State of Louisiana and all rules, regulations, and directives of the State Board of

Education and of the State Superintendent of Education. Said Defendant may be served by

serving C. Brandon Harrell, 321 N. Theard Street, Covington, LA 70433;

B.      The St. Tammany Federation of Teachers and School Employees, American Federation of

Teachers, Louisiana Federation of Teachers (hereinafter known as "the Federation"), a state

affiliate of the American Federation of Teachers. The Federation is the sole collective bargaining

agent with **responsibility** for administering this Agreement on behalf of St. Tammany teachers

and school employees. Said Defendant may be served by serving Brant Osborn, 19295 N. 3rd

St., Ste. 8 Covington, LA 70433-8897;

C.      William "Trey" Folse, III (hereinafter referred to as "Folse"), the Superintendent of the

St. Tammany Parish School Board, is a person of suitable age and capacity and is an adult

resident of the Eastern District of Louisiana. At all times pertinent herein, he had supervisory

and managerial authority over Defendants Jabbia, Cosse, Sanford, Lemane, and Burns. In his

capacity as Superintendent, said Defendant is responsible for the management and operation of

the St. Tammany Parish School System and Board and specifically responsible for ensuring that

School Board and Employees complied with the color and pretense of the federal and state laws

as well as for the hiring, training, supervision, and discipline of agents and employees. The

superintendent shall faithfully carry out the requirements of the state school laws and the rules

and regulations made for the schools by BESE. LA Rev Stat § 17:81. Accordingly, "the Board"

states that the Superintendent shall be the Chief Executive Officer of and Educational Advisor to

the St. Tammany Parish School Board and shall perform his duties as prescribed by the

Constitution and Statutes of the State of Louisiana and in compliance with policies duly adopted

in regular or special sessions of the School Board. The Superintendent shall also be the Secretary

and Treasurer of the School Board. The Superintendent shall be authorized to delegate certain

responsibility for the operation of field operation, instruction, personnel planning, research and

transportation, operations and business to respective designees.  The Superintendent of Schools

alone, however, shall be directly accountable to the St. Tammany Parish School Board for all

results produced at every operational level.  Said Defendant is sued both in his official and

individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may

be served with process at St. Tammany Parish Public School System 321 N. Theard Street,

Covington, LA 70433;

D.     Peter "Pete" Jabbia (hereinafter referred to as "Jabbia"), the Associate Superintendent

of the St. Tammany Parish School Board, is a person of suitable age and capacity and is an adult

resident of the Eastern District of Louisiana.  At all times pertinent herein, he had supervisory

and managerial authority over Defendants Cosse, Sanford, Lemane, Burns, Green, and Craddock.

In his capacity as Associate Superintendent, said Defendant is responsible for the management

and operation of the St. Tammany Parish School System and Board and specifically responsible

for ensuring that School Board and Employees complied with the color and pretense of the

federal and state laws as well as for the hiring, training, supervision, and discipline of agents and

employees.  The associate superintendent shall faithfully carry out the requirements of the state

school laws and the rules and regulations made for the schools by BESE.   LA Rev Stat § 17:81.

Said Defendant is sued both in his official and individual capacities.  Said Defendant is a resident

and citizen of the State of Louisiana and may be served with process at St. Tammany Parish

Public School System 321 N. Theard Street, Covington, LA 70433;

E.     Michael Cosse (hereinafter referred to as "Defendant Cosse"), the Assistant

Superintendent of the St. Tammany Parish School Board, is a person of suitable age and capacity

and is an adult resident of the Eastern District of Louisiana.  At all times pertinent herein, he had

supervisory and managerial authority over Defendants Burns, Green, and Craddock.  In his

capacity as Assistant Superintendent, said Defendant is responsible for the management and

operation of the St. Tammany Parish School System and Board and specifically responsible for ensuring that School Board and Employees complied with the color and pretense of the federal and state laws as well as for the hiring, training, supervision, and discipline of agents and employees. The assistant superintendent shall faithfully carry out the requirements of the state school laws and the rules and regulations made for the schools by BESE.  LA Rev Stat § 17:81. Said Defendant is sued both in his official and individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at St. Tammany Parish Public School System 321 N. Theard Street, Covington, LA 70433;

F.      Regina Sanford (hereinafter referred to as "Defendant Sanford"), the Assistant Superintendent of the St. Tammany Parish School Board, is a person of suitable age and capacity and is an adult resident of the Eastern District of Louisiana.  At all times pertinent herein, she had supervisory and managerial authority over Defendants Burns, Green, and Craddock.  In her capacity as Assistant Superintendent, said Defendant is responsible for the management and operation of the St. Tammany Parish School System and Board and specifically responsible for ensuring that School Board and Employees complied with the color and pretense of the federal and state laws as well as for the hiring, training, supervision, and discipline of agents and employees. The assistant superintendent shall faithfully carry out the requirements of the state school law and the rules and regulations made for the schools by BESE.  LA Rev Stat § 17:81. Said Defendant is sued both in her official and individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at St. Tammany Parish Public School System 321 N. Theard Street, Covington, LA 70433;

G.      Aimee Lemane (hereinafter referred to as "Defendant Lemane"), the Assistant Superintendent of the St. Tammany Parish School Board, is a person of suitable age and capacity and is an adult resident of the Eastern District of Louisiana.  At all times pertinent herein, she

had supervisory and managerial authority over Defendants Burns, Green, and Craddock. In her

capacity as Assistant Superintendent, said Defendant is responsible for the management and

operation of the St. Tammany Parish School System and Board and specifically responsible for

ensuring that School Board and Employees complied with the color and pretense of the federal

and state laws as well as for the hiring, training, supervision, and discipline of agents and

employees. The assistant superintendent shall faithfully carry out the requirements of the state

school law and the rules and regulations made for the schools by BESE. LA Rev Stat § 17:81.

Said Defendant is sued both in her official and individual capacities. Said Defendant is a resident

and citizen of the State of Louisiana and may be served with process at St. Tammany Parish

Public School System 321 N. Theard Street, Covington, LA 70433;

H.      Amy T. Burns (hereinafter referred to as "Defendant Burns"), Principal of William

"Pitcher "Junior High School, is a person of suitable age and capacity and is an adult resident of

the Eastern District of Louisiana. At all times pertinent herein, she had supervisory and

managerial authority over Plaintiff Erin Carter. In her capacity as Principal, said Defendant,

according to "the Board" is responsible for administration and supervision of her school in

cooperation with the Superintendent and the Supervisory Staff, evaluating the efficiency of the

teaching personnel and to make recommendations for acquisition of tenure or dismissals,

fostering professional growth among his teachers, offering opportunities to improve the

instructional program, and working for the best interest of his students and faculty, maintaining

effective communication between school personnel and the School Board Office, seeing that

School Board policies are carried out to the best of his knowledge and ability, constantly striving

to maintain good public relations, seeing that reports due in the School Board Office from

various departments in his school are received on time, notifying the School Board Office when

he expects to be away from the school. Said Defendant is sued both in her official and individual

capacities. Said Defendant is believed to be a resident and citizen of the State of Louisiana and may be served with process at her personal residence in Louisiana.

I.      Deborah "Debbie" Green (hereinafter referred to as "Defendant Green"), President of The St. Tammany Federation of Teachers and School Employees, a state affiliate of the American Federation of Teachers, is a person of suitable age and capacity and is an adult resident of the Eastern District of Louisiana. At all times pertinent herein, she had supervisory and managerial authority over The Federation as a collective bargaining agent with **responsibility** for administering the Collective Bargaining Agreement ("CBA") on behalf of St. Tammany teachers and school employees. Said Defendant is sued both in her official and individual capacities. Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at her personal residence in Louisiana.

J.      Patricia "Trish" Craddock (hereinafter referred to as "Defendant Craddock"), Vice-President of The St. Tammany Federation of Teachers and School Employees, a state affiliate of the American Federation of Teachers, is a person of suitable age and capacity and is an adult resident of the Eastern District of Louisiana. At all times pertinent herein, she had supervisory and managerial authority over The Federation as a collective bargaining agent with **responsibility** for administering the Collective Bargaining Agreement ("CBA") on behalf of St. Tammany teachers and school employees. Said Defendant is sued both in her official and individual capacities. Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at 19295 N. 3rd St., Ste. 8 Covington, LA 70433-8897;

7.      Plaintiff aver and represent that Defendants and their agents and employees, including but not limited to Defendants Jabbia, Cosse, Burns, Lemane, Sanford, Green and Craddock (hereinafter referred

to collectively as "Defendants") acted in a discriminatory manner, willfully and wantonly toward Ms.
Carter, cause-in-fact proximately causing her termination.

8.      No immunity applies in this matter.

9.      Defendants have exhibited a pattern and practice of discrimination, ignoring and violating the
rights of teachers and school employees employed by the St.Tammany Parish School Board, including
Ms. Carter, which led to her termination, and furthermore, negligently and improperly, at times
blatantly ignoring the Boards policy and procedures, as well as state and federal laws, education laws,
negligently supervising and training their employees.

## FACTUAL ALLEGATIONS

10.     At all relevant times, Defendant Burns was the Principal of William "Pitcher" Junior High School
(hereinafter referred to as "Pitcher") and was acting under the color and pretense of the statutes, duties,
requirements and usages of the state of Louisiana school law, the rules and regulations made for schools
by BESE, federal and state laws, the Board, CBA and under the authority of her position and within the
scope of her employment as Principal of Pitcher.

11.     At all relevant times, Defendant Jabbia, Associate Superintendent of the Board was vested with
the obligation of ensuring that the employees and agents of the Board including but not limited to
Defendants Cosse, Sanford, Lemane, and Burns complied with the color and pretense of the statutes,
duties, requirements and usages of the state of Louisiana school law, the rules and regulations made for
schools by BESE, federal and state laws, the Board, CBA and under the authority of the their individual
titles.

12.     Defendant Jabbia was also responsible for the management and operation of the St. Tammany Parish School Board, and the hiring, training, supervision, and discipline of agents and employees including Defendants.

13.     At all relevant times, Defendant Jabbia was responsible to faithfully carry out the requirements of the state school laws and the rules and regulations made for the schools by BESE, adhere to state and federal Constitution and laws, the CBA, and all measures including but not limited to protecting the rights, employment, and safety of Plaintiff Ms. Carter.

14.     At all relevant times, Defendant Cosse was the Assistant Superintendent and was acting under the color and pretense of the statutes, duties, requirements and usages of the state of Louisiana school law, the rules and regulations made for schools by BESE, federal and state laws, the Board, CBA and under the authority of his position and within the scope of his employment as Assistant Superintendent.

15.     At all relevant times, Defendant Sandford was the Assistant Superintendent and was acting under the color and pretense of the statutes, duties, requirements and usages of the state of Louisiana school law, the rules and regulations made for schools by BESE, federal and state laws, the Board, CBA and under the authority of her position and within the scope of her employment as Assistant Superintendent.

16.     At all relevant times, Defendant Lemane was the Assistant Superintendent and was acting under the color and pretense of the statutes, duties, requirements and usages of the state of Louisiana school law, the rules and regulations made for schools by BESE, federal and state laws, the Board, CBA and under the authority of her position and within the scope of her employment as Assistant Superintendent.

17.     At all relevant times, Defendant Folse was vested with the obligation of ensuring that the employees and agents of the Board including but not limited to Defendants Jabbia, Cosse, Sanford, Lemane, and Burns complied with the color and pretense of the statutes, duties, requirements and usages

of the state of Louisiana school law, the rules and regulations made for schools by BESE, federal and state laws, the Board, CBA and under the authority of the their individual titles.

18.    Defendant Folse was also responsible for the management and operation of the St. Tammany Parish School Board the hiring, training, supervision, and discipline of agents and employees including Defendants.

19.    At all relevant times, Defendant Folse was responsible to faithfully carry out the requirements of the state school laws and the rules and regulations made for the schools by BESE, adhere to state and federal Constitution and laws, the CBA, and all measures including but not limited to protecting the rights, employment, and safety of Plaintiff Ms. Carter.

20.    At all relevant times, the Board was vested with the obligation of ensuring that the employees as well as agents of the Board including but not limited to Defendants Folse, Jabbia, Cosse, Sanford, Lemane, Green, Craddock, and Burns complied with the color and pretense of the statutes, duties, requirements and usages of the state of Louisiana school law, the rules and regulations made for schools by BESE, federal and state laws, the Board, CBA and under the authority of the their individual titles.

21.    At all relevant times, Defendant Green was responsible to faithfully carry out the provisions contained within the CBA on behalf of the St. Tammany Teachers and School Employees, executed between the Board and Federation.

22.    At all relevant times, Defendant Craddock was responsible to faithfully carry out the provisions contained within the CBA on behalf of the St. Tammany Teachers and School Employees, executed between the Board and Federation.

23.    Defendant Folse, Defendants, the Board, and Federation failed to keep Ms. Carter safe from the harm caused by the actions and inactions taken by those under his command.

24.     At the time of the execution of Plaintiff, Ms. Carter's, termination, on or around July 5, 2017, Ms. Carter was a citizen and resident of Tangipahoa Parish, in the State of Louisiana, and in the United States of America.

25.     At all times relevant herein, Ms. Carter had legal rights established by the Constitution of the United States, the Constitution of the State of Louisiana, and laws set forth by state and federal statutes.

26.     The actions involved in this case are the result of are the result of the practices, policies, and/or customs of Defendant Folse, Defendants, the Board, its employees, and the Federation.

27.     In this case the Plaintiff Ms. Carter has made a claim under the Federal Civil Rights statute that prohibits discrimination against an employee because of the person's race.  This is a claim for Discrimination, Hostile and abusive work environment, Disparate Treatment, Disparate Impact, Federal and State law violations, breach of contract, Failure to Represent, Conspiracy, Retaliation, and Intentional Infliction of Emotional Distress and Pain.

28.     These violations has cause irreparable harm, including but not limited to pain, suffering, humiliation, loss, financial hardships, overwhelming stress, mental and emotional anguish, abrupt life change, interruption of health benefits, and more for Plaintiff and Plaintiff's family.

29.     Defendant Folse, Defendants, the Board, and the Federation breached their individual duties discharging themselves from their obligations of fairness, and equity to Plaintiff, Ms. Carter.

## BACKGROUND

30.     Plaintiff, Erin Carter (hereinafter referred to as "Plaintiff or Ms. Carter") graduated with a B.S. in Computer Science from Southern University A&M Baton Rouge, returned later completing an alternative education program again from Southern University A&M; earned certification in Mathematics; and earned a Master's Degree in Educational Leadership from the University of Southern Mississippi.

31.     Ms. Carter, an African American female, is a highly qualified educator beginning her career in 2005, teaching in the Tangipahoa Parish School System until 2012. During her teaching career in Tangipahoa Parish she consistently received excellent evaluations. On July 2,2012, Ms. Carter applied for a certified teacher position within the St. Tammany Parish School Board. As required, Ms. Carter submitted both personal and professional references to fulfill the application process. These references regarded Ms. Carter as an asset, team player and willing to grow.

32.     Ms. Carter began employment with the St. Tammany Parish School Board on or around August 6, 2012 as a teacher for Clearwood Junior High School in Slidell, Louisiana. Plaintiff remained at Clearwood Junior High School, teaching sixth and seventh grade math, from 2012 until 2014. During Plaintiff's first year, 2012- 2013, Plaintiff was informed via letter on May 6, 2013 of a Just Cause hearing scheduled in which she must attend.  With no prior knowledge of or understanding regarding a just cause hearing, Plaintiff informed coworkers of the letter seeking an understanding. Plaintiff was then informed the hearing was a disciplinary measure in which she needed to call the Federation for representation.

33.     On Wednesday, May 8, 2013, the just cause hearing was held. Prior to the meeting, one representative from the St. Tammany Federation of Teachers and School Employees, ("Federation"), arrived to speak with Plaintiff prior to the meeting to obtain information regarding the reason(s) for the hearing set to take place. Plaintiff was not informed of the reason(s) therefore unable to provide any information. The representative from the Federation met with the Assistant Principal to receive information regarding the reasons for the hearing. Plaintiff and representative, were informed by the Asst. Principal that a parent had requested student work, a completed homework sheet, to be sent home the same day for review with the tutor and Plaintiff had not as the reason for the just cause. Plaintiff in her own defense, stated she was not informed until later in the day of the request, which she had no time to make a copy and get to student until after school.  Plaintiff continued also stating she

was never informed that the parent/teacher conference scheduled had been cancelled for that evening. Plaintiff, after eight years of teaching received her first reprimand and letter of discipline. During the close of that same year, Plaintiff earned perfect attendance for the 2012-2103 school year.  During the 2013-2014 school year, Plaintiff earned teacher of the month in February.  Nominated by her peers, Plaintiff was noted for always having a positive attitude, being a team player and encouraging others. Plaintiff remained at Clearwood Junior High until the opportunity to teach at Bayou Lacombe Middle School became available for the 2014-2015 school year.

34.     For the 2014 - 2015 school year, Plaintiff was offered a position at Bayou Lacombe Middle School, in Lacombe, Louisiana, to teach sixth grade math and spelling, in which the Plaintiff accepted. During that time, Plaintiff organized and chaired the school's first Career Fair for the 4th – 6th grade students there. Plaintiff collaborated and partnered with businesses, business and community leaders, parents, and organizations to make the career day a success. During that year, Plaintiff was also recognized by the "Board" for her tremendous contributions to United Way. Because of her contributions, Ms. Carter was invited to a luncheon to be recognized, which she did not attend.

35.     Ms. Carter remained at Bayou Lacombe Middle School from 2014 – 2015 until the opportunity to teach at Pitcher Junior High became available for the 2015 – 2016 school year. On Tuesday, May 26, 2015, Plaintiff, emailed then Principal of Pitcher Junior High, Dr. Raphael Tillman, inquiring about the grade 7 Math vacancy that was available yet again.

36.     During transfer fair, Plaintiff was interviewed for the Math position by the Math Department head, Judy Heidelberg, who was Caucasian and principal Dr. Raphael Tillman, who was African American. As result, Plaintiff was offered a position at Pitcher Junior High School, in Covington, Louisiana as a Title II teacher to teach seventh grade math, which Plaintiff accepted.

37.     During the summer, prior to beginning of Plaintiff's first year at Pitcher, Plaintiff, along with

other faculty and staff, received an email on July 27, 2015, from the Assistant Principal, Defendant Amy

T. Burns, asking faculty and staff to assist with the school's dance team summer camp, as the sponsor

without prior notice was unable to supervise. Plaintiff agreed to volunteer a day, which was shared with

another teacher, resulting in half-day duty.  Despite the fact that Plaintiff had no background in dance,

in an email dated September 28, 2015, the Principal asked Plaintiff to assume the role as "sponsor" of

the dance team after the prior sponsor abandoned the position. Plaintiff agreed to take on the dance

team for the remainder of the 2015 – 2016 school year, as an effort to be a "team player."

38.     At the end of the 2015-2016 school year, Principal Raphael Tillman permanently made teacher

assignments for the 2016-2017 school year.  Plaintiff was assigned seventh grade math, and dance team

sponsor for Pitcher.

39.     After the school year ended and summer began, Plaintiff was contacted by school personnel

regarding Plaintiff's end of year assessments and student learning targets (SLT's).  Plaintiff was

instructed to return to complete the required SLT to complete the requirements to calculate Plaintiff's

value-added scores.  Plaintiff upon returning, informed school personnel that she had not been

informed of the requirements of two SLT's despite conferring with Math department members, thus

only submitting only one for Math.  No one informed Plaintiff of the incomplete submission during the

submission dates nor anytime thereafter.  As a result, Plaintiff's second SLT was formulated on incorrect

data, significantly lowering the value added, altering Plaintiff's outcome which was as Principal Raphael

Tillman described, "disappointing to both Principal and teacher."

40.     At some point during the summer of 2016, the Principal of Pitcher Junior High, Dr. Raphael

Tillman was promoted, and the former Assistant Principal, Defendant Burns, was promoted to the

position Principal and/or Director of Pitcher.

2254503799   ENHANCE HHC   11:22:53 p.m.   07-06-2021   20 /53

41.     Prior to the commencement of the 2016-2017 school year, Plaintiff reached out to Defendant Burns to congratulate her on her new position and to also inform her of previously scheduled and recurring medical appointments scheduled for the month of August in the upcoming school year for Plaintiff and Plaintiff's son who had a health impairment due to diagnosis of epilepsy. Plaintiff informed Defendant Burns, that she would be out due to her son's condition, as well as scheduled appointments due to her medical condition and needs, and that a substitute would be assigned for those days.

42.     Upon commencement of the 2016 - 2017 school year, during back to school planning meetings, Principal Defendant Burns, informed the faculty and staff of the passing of a fellow teacher, the former Dance Sponsor. In addressing the loss of a colleague, Defendant Burns reminded staff that no one knows what someone is going through, suggesting staff be sensitive to one another, hoping we realize here (referring to Pitcher) we are not alone.

43.     The last teacher day scheduled for the new school year, just prior to students returning, Plaintiff believed, as previously assigned, that she would solely be teaching seventh grade mathematics and sponsoring the dance team. Nevertheless, hours before students were to begin the school year, Plaintiff learned that she had been assigned a new class, Journeys to Career. No one had informed Plaintiff of this, yet Plaintiff agreed to teach the class requesting curriculum resources and materials, again, in the spirit of and commitment to be a "team player."

44.     Immediately upon Plaintiff commencement of teaching Journeys to Careers, Plaintiff noticed that the students enrolled in the class had individual education plans, behavior plans, as well as health plans which required a lot of extra attention, individually and collectively. The students in this class were classified as "mild to moderate," which required a para-professional assigned to each classroom that these students were scheduled. At some point during the beginning of the school year, a long-term substitute was hired. Unbeknownst to Plaintiff, the Special Education Department Head, Rebecca

Williams (hereinafter known as "Williams") and the Deaf and Hard Hearing Department Head, Suzanne Lynch (hereinafter known as "Lynch") instructed the long-term substitute, "Do not help Mrs. Carter."

45.     Plaintiff requested assistance for these students and inquired about the continued absence of a para-professional. Plaintiff informed the supervisor of administration Dr. Raphael Tillman about the course assignment, the enrolled students and the lack of a para-professional.  Plaintiff later wished to inform Defendant Burns of the situation and upon learning the disparaging remarks which caused the absence and the assistance of a para-professional on October 19, 2016, Plaintiff requested a meeting. While faculty, staff and others were aware of such remarks, the need for additional personnel for student assistance for the class, in addition to the need for curriculum materials, resources, and access to equipment and learning sites to properly lead and facilitate learning, Defendant Burns did not arrange a meeting.  Instead a text was sent from Defendant Burns, apologizing for not being able to speak with Plaintiff as Ms. Carter requested.  Defendant went on to say she hope Plaintiff feels better and if there's a need to still speak with her, let her know

46.     Notwithstanding the foregoing, and despite Plaintiff's repeated requests for same, administration, failed to assign a para-professional to Plaintiff's Journeys to Career class. The mild/moderate students in the Journeys to Careers class struggled academically, behaviorally, and had no prior knowledge or training in most, if not all, the skills required to be successful in the day-to-day course lessons. As such, Plaintiff 's work hours became longer and harder, specifically as a result of the time exerted directly towards the students and in preparation for selecting and modifying lessons more appropriate for these students to address and meet the needs of the students enrolled in the class. All the while, Plaintiff's requests for a para-professional to be present daily in class working with students had not been fulfilled.

47.     Two months after the school year began, the district provided professional development to Career/Technical subject area teachers, which Plaintiff attended on October 11, 2016 for the Journey's to Career class.

48.     During this time, continued changes to para-professional schedules were made, reducing the number of para-professionals assigned to Plaintiff's classes, reducing the time assigned to Plaintiff's classes, as well as an inconsistent presence of a para-professional assigned to Plaintiff's classes, this in addition to the lack of support and presence of a para-professional in Plaintiff's Journey to Careers class.

49.     Upon information and belief, the School Board is allotted a certain amount of funds to supply paraprofessionals to classrooms that are assigned mild/moderate students as well as inclusion classrooms. Notwithstanding this information, Plaintiff spent roughly nine (9) weeks alone with these students in a classroom. Principal, Defendant Burns, despite having been informed of the discriminatory and hostile work environment by Plaintiff, failed to secure a para-professional, address the instructions given by the department heads to the subordinate long-term para-professional or assign any para-professional, daily during these times.

50.     On or around October 28, 2017, Pitcher weekly morning broadcast featured and highlighted Pitcher "Math Department." The school-wide broadcast, televised interviews of every Math teacher to include a skit or mini-production featuring Math teachers in which each teacher played a part. This broadcast featured all Math teachers except Plaintiff. For at least a week, Math department participants worked on and worked with the school's broadcast club to produce this feature. All the while, Plaintiff was not informed nor included in the planned taping. After watching the school-wide broadcast, Plaintiff later requests to speak with Principal, Amy T. Danna, which did not occur.

51.     As a result, on the early morning of October 31, 2016, Plaintiff emailed Defendant Burns, stating, "I would like to speak with you please. Thanks!" A meeting was held that morning to discuss the matters

of great concern to Plaintiff which she shared with Defendant Burns via email prior to the meeting.  It

reads:

> Hi Mrs. Burns, I am emailing you to address some concerns that I have. There are some things on my mind that are weighing heavily. I've tried to push through with much effort to remain positive, productive, and professional, it has become extremely difficult. There has been a lack of consideration towards others, and/or an abuse of power and of authority. It has become a great imbalance between care, concern and control. This year there has been changes to my job description/title without being informed prior to the school year, thus leaving me without a choice. I accepted the new role positively with one request: "Just let me know what I will. need." I did not expect the Journey to Career class assigned to me to be a mild/moderate class. Nearly half of the class is SPED, including a few 8th grade students. There is a disparity in the class sizes and demographics. The impact of these student groups and the difficult behaviors have an immeasurable effect on others, class productivity, work processes, and daily learning goals. Schedule changes were made to adjust to behavior issues and the disruptive/negative peer-to-peer interactions within classrooms, yet, the proposal overlooked the saturation of targeted students in my classes together and only shifted problem students to other classes which has proven to be disastrous. Taking into account the changes taking place, and the disregard to other options, I am obliged in the course of my work to take care of things daily for which I should not bear the sole responsibility. With that said, I still have a moral and ethical obligation to provide a good learning experience and instruction to benefit each student. To do so requires a great deal of cooperation and support from others. There has become a level of incivility that must be addressed:
>
> • Offensive conduct by school leaders and personnel - Statements made in my presence and in my absence - "Don't help her, make her do it!"
>
> Encouraging others to not help someone is inconceivable within a school where the success of the students and school rests upon the synergy of the team. Pitting colleagues against one another does not create a community of support that has a multiplier effect because of the influence over others and the work system. This remark is not an isolated statement, but one that has been stated by several staff members.
>
> • Repeated acts of disregard and rudeness.
>
> • Isolation/Exclusion - Friday morning broadcast titled, "Math Teachers.." in which only 3 of the 4 teachers were featured or participated
>
> • Withholding necessary information, keeping co-workers out of the loop.
>
> • Sarcasm
>
> • Small group meetings among groups where coworkers are discussed negatively, comments regarding continued employment are made, complaining/grumbling, etc.
>
> • Using confidential information about a person to humiliate privately or publicly.
>
> The affect of these words and actions are harmful and destructive. What occurred Friday, and past incidents has shined the light brighter on the level of anxiety I feel as a result of the disrespect, unfair and uncomfortable work environment I often feel. These perspectives/attitudes seem to be a widely held view. Many people share these perspectives. My question is, "What might their reason be?" Why not help someone? Why the great divide, and why now? Is there a particular reason why?
>
> People with power and authority send messages more by their deeds than by their words. Mrs. Burns, I'm not a disgruntled employee. Do you see where I'm coming from? Even people with good intentions sometimes do the wrong thing. Second, prejudice and discrimination are socially influenced. Do we need to back track to make sure we are really grounded in what is important? Or is it me?

52.     During the meeting, Defendant Burns listened and stated she had received complaints/concerns

in the past about the attitudes of the Math department, going on to say that, "those are the

personalities of the members of the Math department." She stated she would consult with the

counselor to check student numbers as a result of Plaintiff's complaint of disproportionate student assignment and numbers. Regarding all other matters, no response or comment was given. Defendant Burns despite having been informed of the discriminatory and hostile work environment first-hand, failed to address the issues or revisit the matter with Plaintiff. Defendant also failed to secure a para-professional, address the instructions given by her department heads to the subordinate long-term para-professional or assign any para-professional daily during these times.

53.     On November 4, 2016, Principal Amy T. Burns sent a communication via email [Gmail: ] to all faculty and staff members regarding student behavior and student referrals, to include an immediate meeting to be held that afternoon immediately after school. The email initiated by Principal Amy T. Burns generated a number of responses from numerous faculty and staff members. While the Plaintiff had no prior knowledge of or about the contents or said actions within the email, Plaintiff remained after school as instructed.

54.     Principal, Amy T. Burns, addressed the contents of the email with the faculty and staff. In doing so, she apologized stating her reasons for not responding to or processing disciplinary referrals in a timely manner, and for those aggrieved, the courtesy of coming to her office to discuss matters before going to the union is appreciated – "my door is open," she stated. In frustration she explained, "Good grief, it's my first freaking year!" She went on to say that refusing to help a co-worker is unacceptable. She then asked the faculty and staff not to allow the recent presidential matters to affect staff at Pitcher.

55.     It is believed, and as a result of emailed communications to faculty and staff sent by Principal Amy Burns, an effort to address the ongoing behavior issues, reduce student referrals and address faculty/staff complaints were made [EXHIBIT]. The email instructed teachers to send a list of the students who habitually disrupt and exhibit behavioral issues detailing the class/hour the student is

assigned. As a result, many student schedules were changed with the goal of separating those students who individually and in groups collectively caused continuous disruptions to the learning environment in teacher classrooms.

56.      While Plaintiff did not have a list to submit, these changes affected Plaintiff's classes. Students who had previously received instruction during one period were now re-enrolled in a different period. Those changes caused an eruption in some classes, causing Plaintiff to spend additional time asserting expectations and ensuring a positive and safe learning environment for all without the assistance of a para-professional.

57.      For Plaintiff, an unusual circumstance arose in the year with a student. Despite communication with both parent and student, as well as parent involvement, the student seemed incorrigible. On many occasions, the student refused to enter Ms. Carter's classroom. Times in which the student did enter the room and remained, much attention and motivation was required to establish a working and respectful relationship while obtaining a level of compliance that is required in the school and learning environment. After several incidents, the student asked to be placed in a different classroom. Despite student request to administration and teacher, no change was made.

58.      Student rebellion and defiance continued. Despite student attendance and presence at school, student continued not to report to Ms. Carter's class, informing her peers that she would not report to class and wandering the hallways. Plaintiff requested that the student's request for another teacher be granted, but it was ignored. This caused the loss of learning for the students in class as well as the student refusing to report, as Ms. Carter daily had to ensure the safety of this student and ensure that the student was accounted for while not in the class assigned. This required emails during class time and visits to the door to look for student or motivate student to enter. Still no change in student and no para in this class.

59.    An email was then sent informing Principal Amy T. Burns that the student is continuing to

wander and not report, thus causing a loss in instruction and academic time. Thereafter, a schedule

change was finally made. However, the student within a week of being assigned to a different Math

teacher who was Caucasian, was then put out of school and assigned to a different school and location.

Plaintiff became aware of this when a request for grades were sent. The student's new Math teacher,

Math Department Head Judy Heidelberg, emailed concerning student grades as she did not have any for

her new student who had been removed (expelled) from the school.

60.    In November, upon the hiring of a special education teacher or para, support for students were

provided on a more consistent basis for Plaintiff's Journey to Careers class. This placement however did

not provide for a consistent para, as the para who was briefly assigned was eventually taken out of the

classroom as a result of continued para-professional schedule changes.

61.    As the school year continued, Plaintiff experienced more challenges and resistance, while the

requests for support from other colleagues and students continued and increased [Jenkins, Rob,

tutoring]. On or around March , Plaintiff became ill at school once more suffering a migraine attack,

such that Plaintiff had obtained class coverage to report to office to speak with Defendant Burns,

Principal. During that meeting, Plaintiff informed Principal that she had contacted her primary care

physician requesting an appointment to obtain a shot for the pain. During the meeting, Plaintiff

explicitly shared with Defendant the overwhelming pain and her fear as she did not know what was

going on, but the pain was "real and it seems to be worsening and occurring more frequently." Plaintiff

went on to share with the Defendant, stating, "Woman to woman, I need my job, my insurance, and my

children to attend the feeder school." Plaintiff informed Defendant that she was out of sick days but

needed to leave due to her illness but was beyond the sick days allotted. During the meeting with the

Defendant, while in her office, the hospital nurse called back stating an appointment that day was made

if Plaintiff could attend. Plaintiff received permission to take a half-day to see the doctor while speaking

2254503799   ENHANCE HHC

with the nurse. Prior to the meeting concluding, Defendant Principal stood up, walked around her desk to sit next to Plaintiff, placing her hand on Plaintiff's shoulder stating it's ok, assuring Plaintiff everything would be alright. She understood. Plaintiff left work to get the needed medical attention and shot.

62.     On Monday, April 24, 2017, upon returning from the Easter break, Plaintiff completed the teaching day despite the onset of a migraine. Plaintiff attended an afterschool meeting immediately after dismissal for all staff, then left campus to timely enter carpool at each of her children's school for pick up. Plaintiff then brought her youngest son to scheduled physical therapy as required due to the health and educational impairment caused by epilepsy, and then immediately returned to the school's campus for a dance team meeting which was scheduled previously in March. Upon arriving to the school, Plaintiff called the custodian to obtain access to the building. Plaintiff's condition began to worsen, becoming so ill that she could not remain in her class to lead the evening scheduled meeting events. Resting her head and sitting very still in the school lounge, Plaintiff asked the custodian on campus to inform the Universal Dance/Varsity representative to continue the fitting with the girls and see Plaintiff prior to leaving. Also, during that time, Plaintiff gave permission to a parent to discuss fundraisers as an opportunity to assist with the cost of dance apparel and summer dance camp, which were both costs incurred within a brief time frame for the parents of each dancer. Plaintiff's condition did not improve, causing Plaintiff to regurgitate in the women's restroom. After attempting to clean herself and the area, Plaintiff was met by the custodian who stated she would clean the area and asked if there was anyone she could call to pick Plaintiff up that evening. Prior to leaving the campus that night, the representative nor did any parent meet with Plaintiff. Plaintiff when able returned to her class to leave communication to inform Defendant Amy T. Burns of her absence for April 25, as well as prepared and left lesson plans for the substitute whom Plaintiff contacted and assigned.

63.     On April 25, 2017, Plaintiff obtained leave applications provided for employees on the STPSB website. Plaintiff, as well as Plaintiffs primary care physician completed the Extended Sick Leave

application to include the required medical necessity statement and health certificate attachments.

These three documents were faxed from Ochsner on April 26, 2017. On that same day, April 26, 2017,

Plaintiff emailed Defendant Burns to communicate and explain the events on Monday, informing

Defendant of her condition, as well as arrangements made for upcoming days. Plaintiff also went to the

school to make contact and deliver doctor notes. Unsuccessful, Plaintiff sent an email that evening to

inform Defendant, that Plaintiff would be out of the classroom.

64.      On April 27, 2017, calls to the STPSB Human Resources office to confirm receipt of faxed

documents from Ochsner were made, however, Plaintiff was unable to speak with the designated

representative. An email to Principal stating Plaintiff would be out of classroom, as well as to indicate

substitute status was also sent.

65.      Friday, April 28, 2017, began the first of a series of emails to HR requesting communication

regarding receipt of the faxed medical documents and leave request entitled, "Extended Sick Leave."

Plaintiff also received the first communication from Defendant Amy T. Burns, Principal, communicating

in an email, "Thank you for keeping me informed this week and if there is anything I can do to help,

please let me know."

66.      On Monday, May 1, 2017, an email to Principal: Out of the classroom at 6:46AM was sent by

Plaintiff. Next, a follow up email to HR was also sent as Plaintiff had not received a response from

previous attempts at 6:58AM. That email from Plaintiff states,

> "Good morning Mrs. Ortiz, Please read below. Additionally, I have continued to contact my
> principal Mrs. Amy Burns daily as I am uncertain if she (as well as your office) has received any documents
> or paperwork. An email would be appreciated acknowledging receipt, how to proceed, what's required
> of me at this point, etc. Thank you."

67.      Later that morning, Plaintiff received the first response from HR Amy Ortiz communicating

Defendant's denial of Plaintiff's leave stating,

"Mr. Jabbia has just reviewed your request for extended sick leave and unfortunately has determined it does not qualify.  In order to use extended sick leave the state says it must be catastrophic/life-threatening medical reason or total incapacitation as hospitalization. You do however qualify for a medical leave without pay. If you are unable to return to school please complete the attached application and return to Human Resources.  I will make a copy of the doctor's note that was received with your extended sick leave application and attached it to the leave without pay application."

68.     May 4, 2017, Plaintiff asked for a review of the decision in a second extended sick leave request

with attached medical documents to include all accessible medical history pertaining to Plaintiff,

informing all Defendant's (superintendents and principal) of leave request, asking for reconsideration as

the definition stated in the May 1, 2017 email did not include or acknowledge "chronic condition" as the

state definition does.  The email to Amy Ortiz in Human Resources reads as follows:

"Hello, A medical form stating medical necessity was faxed on April 25, 2017 from my primary care physician as required for my request for extended sick leave.  While I appreciate your attention to my request, your response (below in previous email) regarding the unmet criteria for a "Medical necessity" which means the result of catastrophic illness or injury, a life threatening condition, a chronic condition, or an incapacitating condition, as certified by a physician, of a teacher or an immediate family member did not acknowledge a chronic condition.

Therefore, I am resubmitting the request yet including my entire medical history from Ochsner and North Oaks, and waiting for medical release information from St. Elizabeth which will date back to 1995 I am sure, and will submit any other documents as needed in hope that you truly consider my current condition. Many of you don't even know who I am, what it's been like and how hard it has been.  It is very disheartening to receive the email I received Monday.  This week alone I have had a neurology appointment, 2 days at Children's Hospital, and a psychology appointment.  As a teacher at Pitcher Jr, High, Mrs. Burns is the only person who can attest to the seriousness of this matter and my pain.  It continues to worsen and has affected my ability to function an entire school day and add value to the school's mission.  It is affecting me both professionally and personally.  After standing as long as I could have, and then having to request ESL and be told I don't qualify made me understand how veterans feel after having served, yet to return not having any benefits, jobs, assistance, whatever...when they need it most."

69.     Friday, May 5, 2017, a response to the reconsideration from Defendant Associate

Superintendent Jabbia was received stating, "I have received your information and will review and notify

you of our decision."  While Defendant, Associate Superintendent Jabbia reviewed the extended sick

leave request, Plaintiff continued to communicate leave informing Principal Amy T. Burns via email on

Monday, May 8, 2017 she would be out of the classroom this week. That same day, an email from the

school's Secretary was composed regarding questions about fundraiser money. Plaintiff responded May

9, 2017 to the Secretary.

70.     On Wednesday, May 10, 2017, a response from HR Amy Ortiz was sent stating again Plaintiff's

request did not meet state criteria, stating, "The additional medical information you provided has been

reviewed by Mr. Jabbia. Unfortunately there were no findings within the submitted medical

documentation that met the qualifications for extended sick leave. Although you are not eligible for

extended sick leave based on the information received, you are eligible for a medical leave without pay.

If you are unable to return to work please complete the attached application and return to Human

Resources." This would be the last communication from Defendant's STPSB regarding Plaintiff's

extended sick leave request and eligible leave Plaintiff qualified for.

71.     On Monday, May 15, 2017, Plaintiff emailed Defendant Principal Amy T. Burns informing

Defendant, Plaintiff would be out this of the classroom this week. On this day, a phone call from the

school's bookkeeper was received by Plaintiff's husband. Plaintiff was informed of the call.

72.     The next day, May 16, 2017, Plaintiff emailed Defendant Principal Amy Burns and Asst. Principal

Dr. Adrienne Benavides informing them Plaintiff would be out the remaining of the school year. The

May 16 email was sent at 8:06AM with Subject: Doctor's Excuse Notes; stating,

"Attached are forms since being out. My condition varies at times, some good days, some bad,
and there are the debilitating days. It's real and its serious. Unfortunately, it was not considered as
being so. I will be out the remainder of the school year. I have had 2 psych appointments: 05/04 &
05/15 that I did not receive notes from but will get those if needed. There was a neurology
appointment March 24th that is not attached and on May 11th there were no clinicals. That can be
provided as well if required. I feel better at times and I'm learning how to better cope on the not so
good days. If you need me or anything else please let me know. Thanks"

Also on this day, Plaintiff informed both Defendant Principal Amy T. Burns and Asst. Principal of the
following:

"I wasn't sure if Central office communicated with you the status of my leave request. It was

denied again. Thank you."

73.     Plaintiff sent an email to bookkeeper Ms. Jamie Ruth regarding her phone call placed the day

before. Five (5) email exchanges between Ms. Jamie and Plaintiff occurred regarding fundraiser

money/dance camp.  During that same time, Plaintiff placed a phone call to para and secretary assistant

Mrs. Barbara Driver's cell.  The call and conversation occurred while Mrs. Driver was in the front office at

the school.  Plaintiff was responding to Mrs. Driver's cell phone call regarding dance team mom and

missing payment.  Mrs. Barbara, Ms. Bridget and Plaintiff communicated that morning until the money

was found.

74.     On May 19, 2017, Plaintiff received via email her 2017-2018 teaching assignment.  The form,

sent by the school's bookkeeper on behalf of Defendant Burns, requested Plaintiff's signature.  Before

signing Plaintiff emailed Defendant Burns several times regarding the new assignment.  Plaintiff while

out on leave had been given an additional assignment for the upcoming school year.  The addition

would be the second addition, as each year Defendant Burns added to the assignment of Plaintiff.

Assigned to Plaintiff the following:  Math – Grade 7, IBCA, and Journey to Careers.  The following emails

were exchanged:

> From: Carter, Erin L.
> Sent: Sunday, May 21, 2017 6:13 PM
> To: Burns, Amy T.
> Subject: FW: Carter Teaching Assignment
>
> Hi Mrs. Burns,
>
> How many sections of each of these areas will I be assigned and has anyone considered
> sponsoring the dance team?  Thank you,
>
> Erin Carter
>
> Sent: Monday, May 22, 2017 9:24 AM
> To: Carter, Erin L.
> Subject: RE: Carter Teaching Assignment
>
> Mrs. Carter,

I am not sure yet since we are in the preliminary stages of scheduling, but I anticipate 2 sections of each course.

Amy Burns
Principal
Pitcher Junior High
From: Carter, Erin L.

Sent: Monday, May 22, 2017 9:56 AM
To: Burns, Amy T.
Subject: RE: Carter Teaching Assignment

Will there be other teachers teaching these courses as well, like last year both Jenkins and I taught JTC? Will it be a mixed group 7th & 8th or will the classes be by grade level? I've not heard of IBCA and any word about dance team...just checking. Thank you Mrs. Burns,

Erin Carter


From: Burns, Amy T.
Sent: Monday, May 22, 2017 10:01 AM
To: Carter, Erin L.
Subject: RE: Carter Teaching Assignment

No one else with be teaching the J to Careers and we are hoping to have them just by grade level. IBCA is needed for very diploma path at the high school level. It is a computer class. Not sure about dance team yet.

Amy Burns
Principal


75.    On May 24, Plaintiff received an email from the school secretary/student services requesting

Plaintiff's signature on the Title II OMB form. See below:

From: Estes, Bridget M.
Sent: Wednesday, May 24, 2017 8:07 AM
To: Carter, Erin L.
Subject: OMB

Hey!

Hope you are doing ok! I have attached the OMB form for you. They need it signed it blue ink. Would you be able to print it, sign it in blue ink and scan it back to me?

Thank you,
Bridget

Bridget Estes
Pitcher Jr. High- Student Services

76.     On June 1, 2017, Plaintiff received an email directly from Defendant Burns informing Plaintiff of

new assigned classroom

From: Burns, Amy T.
Sent: Thursday, June 01, 2017 2:31 PM
To: Carter, Erin L.; Thomas, Aaron R.; Williams, Rebecca B.; Knapp, Lesley V.; Stephens, Natasha R.; Featherston, Cindy M.
Cc: Estes, Bridget M.; Frederick, Brandon S.; O'Bryant, Sandy H.; Lee, Jessica S.
Subject: 2017 room assignments

The following is your room assignment for 2017-2018

Carter – room 206
Knapp – room 103
Thomas – 117
Williams – 213
Featherstone and Stephens – 118 – please work together on how to utilize this space


Amy Burns
Principal


77.     Four (4) days later on June 5, 2017, a Just Cause notice was drafted and mailed by Defendant

Burns. The certified letter had been incorrectly addressed. Only 4 digits were written to the 5 digit

house number. An error on Defendant Burns behalf.

78.     Due to non-receipt, On June 13, 2017, Defendant Cosse mailed a certified letter informing

Plaintiff of a scheduled hearing to determine Plaintiff's employment status with the board, due to the

following allegations made by Defendant, Principal Amy T. Burns on June 5, 2017: (1) unauthorized leave

since April 25, 2017, (2) unauthorized school-wide fundraiser, and (3) inconsistencies in gradebook compliance. In the letter it states Defendant Amy T. Burns made several attempts to contact Plaintiff, but with no response from Plaintiff. The regular and certified mailed letter by Defendant's STPSB included an attachment of the Just Cause letter drafted by Defendant Principal Amy 13T. Burns on June , 2017, alleging the aforementioned.

79.    Thirteen (13) days later, on May 26, 2017, a just cause hearing was held. Led by Defendant Cosse, with Brandon Frederick participating, and Plaintiff present with the Federation President Defendant Green and Vice-President Defendant Craddock assigned to represent Plaintiff. Plaintiff during the hearing informed all Defendants that she would be out of the classroom due to illness, requested extended sick leave. Denied extended sick leave, Plaintiff was informed that she does qualify for and is eligible for leave without pay.

80.    Defendant's argued as a result of Plaintiff failure to sign and return the leave without pay form attached to email, Plaintiff was on an unauthorized leave.

81.    Plaintiff informed the Defendants that no one, none of the Defendants communicated to Plaintiff the status of her leave.

82.    Defendants went on to say that no one had heard form Plaintiff after May 16, 2017. Defendant Cosse stated Defendant Burns stated she did not hear from Plaintiff since that date. Plaintiff disputed that fact as well. In doing so, Defendant instructed Plaintiff to submit all "Amy emails beyond May 16."

83.    Plaintiff emailed all communication after May 16, 2017, as noted in the previous sections, to Defendant.

84.    Two days later, Defendant Cosse called Plaintiff, informing Plaintiff he had "bad news." Defendant stated that the Board had decided to terminate my employment with the school system.

Defendant Cosse stated that Plaintiff had the right to resign by July 5, 2017. Defendant went on to tell Plaintiff, that if she chose not to resign, Defendants, the Board, would execute termination of my employment.

85.     Plaintiff, Ms. Carter, did not resign as she had no reason to do so. Plaintiff informed Defendants and the Board via letter hand-delivered to the Board her intent to remain employed.

86.     Defendants and the Board terminated Plaintiff employment at the close of business on July 5, 2017.

87.     As a result of investigation, the DOL reported violations to include failure to keep record, failure to provide designation notice, rights and responsibilities, as well as deficient application form.

<u>**VIOLATIONS**</u>

88.     These violations are the results of the wrongdoing undertaken pursuant to a custom or a formal policy of the school district. The individual(s) who committed the wrongful act against Plaintiff, Ms. Carter, or failed to act was an official with final policymaking authority, or an official with final authority who ratified a subordinate's wrongful act.

**Count I**
**42 U.S.C. § Section 1981**
**42 U.S.C. § Section 1983**
**Monell Claim Section 1983**
**14th Amendment Due Process and Equal Protection**
Section 1983 – Fourteenth Amendment Due Process Clause
Section 1983 – Fourteenth Amendment Equal Protection Clause

**Defendant St. Tammany Parish School Board, St. Tammany Federation of Teachers and School Employees, Defendant's Amy T. Burns, Peter "Pete" Jabbia, Michael Cosse, William "Trey" Folse, III, Aimee Lemane, Regina Sanford, Deborah Green, Patricia Craddock**

**Compensatory Damages, Punitive Damages, Back Pay, Front Pay, Nominal Damages**

Plaintiff, was discriminated against, harassed, retaliated against and finally terminated due to her race by Defendant St. Tammany Parish School Board, St. Tammany Federation of Teachers and School Employees, Defendant's Amy T. Burns, Peter "Pete" Jabbia, Michael Cosse, William "Trey" Folse, III, Aimee Lemane, Regina Sanford, Deborah Green, Patricia Craddock. Plaintiff was deprived of constitutional rights by the decision of a final policymaker or by a school districts failure to train their staff on their policies.

Actions

- 2016 -2017, Plaintiff's second year at Pitcher, Plaintiff was no longer under the leadership of Dr. Raphael Tillman, who hired her as he received a promotion. Plaintiff's children, who were students at Holy Ghost Catholic School would transfer and enroll into St. Tammany Parish Schools. New principal Defendant Burns, informed Plaintiff that her children would have to catch the bus to attend their new school. Upon receiving that information, Plaintiff inquired further regarding the bus number and pick-up time. Defendant Burns informed Plaintiff of the bus number and stated her children would be the first students on the bus as the driver parks the bus between the two schools. This would require Plaintiff to arrive at her workplace at minimum an hour or more prior to Plaintiff's scheduled arrival time. Plaintiff considered the wake up time, travel time to work and pick up location, time of full route and arrival at school, and determined other arrangements must be made for her kindergarten and 2nd grade school aged children. Several days later, Plaintiff received a call from a co-worker who explained that she lived in Tangipahoa parish as well and has a daughter who would be attending CES as a 1st grader. She informed Plaintiff that Principal Burns had given her permission to walk her daughter to school and if I would like to do the same. Plaintiff indeed accepted the offer, understanding the response given to Plaintiff was different from her colleague. Because the school is one block away less than 0.3 mi, teachers could walk their children to school and return within 10 minutes or drive and return within 4 minutes. Plaintiff and her colleague determined that they would walk the children together or take turns. These plans were interrupted such that, Plaintiff was scheduled off first period, and Mrs. Matthews was scheduled a class. Therefore, Plaintiff became the sole individual to walk kids to school in the mornings. Colleague was gracious to return the favor on evenings Plaintiff was instructing Dance Team.
- Plaintiff terminated for engaging in protect activity, communicating discrimination, hostile and abusive work environment, and exercising right to FMLA qualifying leave without pay by Defendant Folse, Defendants, the Board and the Federation.
- Plaintiff OPPOSED discriminatory practice of overloading (scheduling of classes and students, overwhelmimg (refusing to assist, refusing to provide assistance, discriminatory acts and statements, and overlooking teacher (indifferent towards teacher declining health and request for leave for medical attention) retaliated against by Defendants.
- Adverse and Disparate treatment for not signing and submitting leave without pay, despite unforeseeable leave which caused immediate leave prior to obtaining form. Action taken by Defendant Folse, Defendants, the Board and the Federation.
- Defendant Burns Providing and assisting Caucasian female Math teacher with leave documents after returning from a sudden unforeseeable leave due to pregnancy complications several weeks after deliverable, returning to Pitcher with baby for staff to see.
- Defendant Burns Initiated Just Cause to Alleged matters that were false, resulting in termination.

- Defendant Burns sought parent to obtain information regarding alleged fundraiser
- Defendant Burns added to Plaintiff assigned teaching assignments, while removing an assignment from Math co-worker who gave birth.
- Defendant Burns added assignment to Plaintiff while on leave for the upcoming school year, while removing an assignment from co-worker on leave set to return next year like plaintiff. Plaintiff had 3 assignments while over 75% of staff had only one.
- Defendant Burns informed Plaintiff that her children would have to ride bus to school, while giving permission to Caucasian teacher permission to walk her daughter to school. Colleague informed me. As a result, I too, was allowed to walk my children to and from school.
- Defendant Cosse, supported Defendant Burns request for termination despite no findings, evidence, documents presented to support request.
- Defendant Burns conspired with Defendant Folse, Defendant Jabbia, Defendant Cosse, the Board
- Defendants Lemane, Burns and Sanford were informed of Plaintiff requests and complaints. None of the Defendants intervene at any point and were in the position to act.

Inactions

No anti-harassment, no anti-discrimination policy, and no retaliation policy in handbook nor

CBA. The absence of such policies expose the Board, Defendant Folse, Defendants, and the Federation's

custom of tolerating, practicing, and exercising harassment, retaliation and discrimination

### Defendant Burns and employees

- No action take to address Plaintiff's concerns and complaint of Discrimination and incivility at Pitcher by Defendant Burns.
- Discriminatory treatment in the assignment of courses, student numbers, assignment of students by Defendant Burns.
- Discriminatory treatment by colleagues at Pitcher refusing to assist Plaintiff, isolate and exclude Plaintiff regarding math department matters and other pertinent job information. Defendant did not address nor revisit any of Plaintiff's concerns.
- Defendant Burns did not communicate concerns with Plaintiff, instead spoke with parent.
- Defendant, Principal Amy T. Burns, did not inform Plaintiff of alleged violations nor offered to assist Plaintiff with obtaining or fulfilling leave requirements which were extended to as well
- Defendant Burns did not intervene or communicate that she observed Plaintiff vomiting on many occasions to Defendant Jabbia or other Defendants.
- Professionalism and courtesies provided to other teaching staff. Plaintiff was excluded, receiving no assistance. More of the "Don't help her – make her do it!"
- Allegations stated to terminate employment and label Plaintiff work performance as poor by Defendant Burns, Defendant Cosse, and accepted by Defendant Folse, the Board and Federation
- Math Department head request feedback from Plaintiff as instructed by Principal, however, following meeting no one communicated the decisions or process/procedures going forward. Ex: Grades

- Having to return several days after the end of the school year as new employee was not informed on the requirement of 2 SLT's, thus negatively affecting score tremendously.
- School wide broadcast of Math teachers in which Math teachers were highlighted. All Math teachers were aware of the production idea, participated in the filming, were interviewed, and highlighted except Plaintiff. This broadcast was featured Pitcher Jr. High "MATH TEACHERS"

Harassment/Retaliation

- Comments regarding apparel, directed at Plaintiff when dressed to par for an observation or evaluation
- Comments: I wouldn't be upset if I didn't have to see that face.
- Comments: "Little girl what are we going to do with you?", "Mrs. Carter, are you secretly dying on us?", "GO, GO, that is fine….we don't want you hear," while in a Math meeting being led by District Personnel.
- Department meeting which African Americans students were the topic. Round table discssion on why smart African American students do not want to be recognized or receive any awards or acknowledgements. While all seemed baffled concluding why they (African American) boys do not feel or think it's cool to be smart. Finally, one department member turned to me and asked me specifically why is that?  So much so, one later apologized in the meeting realizing I was singled out as the "answer" to why these African American students feel or behave in such a manner.
- Comments about black hair styles and questions.
- Dance team sponsor was unable to lead the dance camp, therefore, Defendant Burns, requested support. When Plaintiff became ill, unable to work due to illness, having given and submitted proper paperwork, was never offered, never addressed, and did not receive support from principal, or courtesy of having Principal reach out to the entire staff to request support. Again, don't help her, make her do it mentality and disposition.
- This same teacher, who taught grade 8 JTC, was relieved of her assignment for the upon coming school year. The removal of grade 8 JTC was removed from her teaching assignment, and added to Plaintiff's teaching assignment for the upcoming year.
- Two JTC classes. Both JTC classes were taught by two Math instructors. Plaintiff and Jenkins. Plaintiff taught Grade 7 Math and Grade 7 Journey To Careers (JTC). Jenkins, Caucasian taught Grade 8 Math and Grade 8 JTC. Despite the two classes, assigned by grade level, Plaintiff was assigned several Grade 8 students, who were all mild/moderate students. These students were not assigned to the Grade 8 Math teacher who lead the Grade 8 JTC. This teacher had at most 9 students in the class, while Plaintiff had double.
- Plaintiff had significantly more assigned Math students in 5 classes than her colleagues with 6 classes of Math.
- While Math colleagues all had only 1 assignment, Plaintiff was assigned 3: Math, JTC, IBCA. Despite communicating the disparities to Defendant Principal months prior. There was no action taken to create a more equitable learning environment for the students. Plaintiff continued to be assigned new students enrolled, and concerns being ignored. As a matter of fact, the abuse of power continued. After sharing concerns, Plaintiff was reassigned a new classroom, removing her from the Math hall on the 1st floor to the second floor. Downsizing class size from Math class to storage room made into small computer lab, an area that is not conducive to teaching and learning as desks are along the walls, with half of the class out of view of white board. Impossible situation. Working conditions and assignment changed.

- Math department head has training or certificate in technology. While she only had 1 assignment, she was not assigned the IBCA class, instead given to Plaintiff who had two assignments, given more JTC classes and an additional assignment IBCA by Defendant Burns.
- Antagonistic work environment / culture that created an unwelcomed and unimportant feeling. Unvalued and undervalued with no consideration for the extra work taken on, having to take on more than my fair share of responsibility, yet despised and treated as if Plaintiff is invisible. Deprived of job support, job related information, job benefits, job protections, and simple professional courtesies – just unfavorable working conditions for Plaintiffs. The burden and cost of being a teacher of color, taking its toll daily, physically emotionally and psychologically.
- Excluding Plaintiff can by relocating the employee to an area where she has little contact with other workers by Defendant Burns.
- Plaintiff disciplined due to false allegations. Discipline reflective more so on a zero-tolerance policy versus ladder approach by Defendant Folse, Defendants, the Board, and Federation.
- Perceived connectedness to students of color increased the request for being a disciplinarian or go to person when questions arise regarding students and parents. The handling of difficult students, classes, given to Plaintiff versus distributing the work.
- These action by the Defendants were serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.
- Defendants Lemane, Burns and Sanford were informed of Plaintiff requests and complaints. None of the Defendants intervene at any point and were in the position to act.

**Count II**
**Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185**
**42 U.S.C. § Section 1983**
**Monell Claim Section 1983**
**14th Amendment Due Process and Equal Protection**
Section 1983 – Fourteenth Amendment Due Process Clause
Section 1983 – Fourteenth Amendment Equal Protection Clause

**Defendant's Amy T. Burns, Peter "Pete" Jabbia, Michael Cosse, William "Trey" Folse, III, Deborah Green, Patricia Craddock, St. Tammany Parish School Board, St. Tammany Federation of Teachers**

A collective bargaining agreement ("CBA") governed Plaintiff's employment with the "Board." The

"Board" and the St. Tammany Federation of Teachers and School Employees, American Federation of

Teachers, Louisiana Federation of Teachers (the "Federation"), which is the union representing STPSB

employees, including Plaintiff, negotiated the CBA.

Plaintiff, Ms. Carter, at all times relevant to this action, was employed by the
defendants as a Grade 7 Mathematics teacher, Journey to Careers Elective teacher, and
Dance Team Sponsor, and was a member of the St. Tammany Federation of Teachers
and School Employees, American Federation of Teachers, Louisiana Federation of
Teachers (hereinafter known as the "Federation"); that the "Defendants" and
"Federation" entered into collective bargaining agreements covering the terms and
conditions of employment for employees such as Ms. Carter (the "CBA");

While working within the course and scope of her employment, and while fulfilling her
employment duties and responsibilities assigned by Defendant Burns, Principal of "Pitcher" and
"Defendants", "Defendants" and the "Federation" breached the "CBA" in several respects, such that
Plaintiff asserts she has never received nor was ever presented with a copy of the "CBA" during or
throughout Plaintiff's tenure, violating the following provision which is COMMON to ALL EMPLOYEES:

## ARTICLE VIII - GENERAL PROVISIONS
**Section 8:04 - Distribution to New Employees; Page 22**

Each newly hired employee covered by this Collective Bargaining Agreement shall receive a copy of the
Agreement from the Federation no later than five (5) working days after commencement of
employment or 15 working days after the Agreement has been printed, whichever shall last occur.

### Section 8:06 - Form of Printed Agreement; Page 23

The Agreement shall be printed and distributed to all members of the Bargaining Unit, all St. Tammany
Parish School Administrators and all members of the Board in a form to be agreed upon by the
Superintendent, or designee, and the Federation President, or designee. Sufficient copies shall be
prepared so each party shall also receive a reserve supply equal to 20% of the total required by the first
sentence of this Section.

Plaintiff became seriously ill and could not continue actively working beyond April 24, 2017 of the school
year. As required, Plaintiff's primary care physician submitted the following: (1) The "Board" Application
for Extended Sick Leave Medical Form completed in its entirety by Plaintiff's Physician, (2) The "Board"
Medical Form for Extended Sick Leave Certification of Health Care Provider for Employee's Serious
Health Condition with Physician signature below the statement, "My signature below states that I swear
and certify that my patient's diagnosis fits the definition of a "medical necessity" as defined above, and
(3) Signed Medical Necessity Letter on Physician letterhead dated April 25, 2017 stating:

To Whom It May Concern:

It is my medical opinion that Erin "Erin" Carter requires extended sick leave due to intractable migraines. She is pending further treatment with the specialist and is currently unable to work.  Projected return to work date May 24, 2017.  If you have any questions or concerns, please do not hesitate to call.

Under the applicable (2016 – 2020) "CBA," Plaintiff aver that Defendants denied compensated Extended Sick Leave, as well as interfered with Family and Medical Leave to which Plaintiff was entitled, further breaching the "CBA," by improperly denying her the aforesaid benefits COMMON to ALL EMPLOYEES:

**ARTICLE II - COMPENSATED LEAVE TIME**
**Section 2:04 - Extended Sick Leave; Page 17**

Section 2:04 - Extended Sick Leave Employees shall be entitled to extended sick leave in accordance with Louisiana Revised Statute.

**ARTICLE XII - LEAVE WITHOUT PAY**
**Section 12:01 - Family Leave; Page 25-26**

(a) An employee will be entitled to family and medical leave in accordance with the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., as amended from time to time. (b) The request for leave under this Section must be in writing on an application form as provided by the Department of Human Resources. The request for family leave shall be accompanied by a medical certification where appropriate. Medical certification shall be renewed and updated as the law may permit. Upon return from leave under this Section, the employee shall be returned to the school and assignment from which the leave was taken or to an equivalent position. (c) Medical benefits will be continued during the leave provided the employee pays that portion of the premium he is required to pay under this Agreement..

Plaintiff, attempting to exercise her right to seek medical leave, engaged in a protected activity.  Forty-two days later, Defendant Principal Burns drafted allegations accusing Plaintiff of the following stating:

Dear Mrs. Carter.

Please be advised that in accordance with Article III of the Collective Bargaining Contract a hearing has been scheduled to begin at 9:00 AM on Tuesday, June 13, 2017 in the principal's office of Pitcher Jr. High.  One purpose of this conference will be to fully explain to you the reason(s) why disciplinary action is being considered, or why it may be warranted before any discipline is imposed. Another purpose of the conference is to give you the opportunity to present any information, evidence or mitigating circumstances which you believe should preclude or moderate any disciplinary action. The concerns are:

o Unauthorized leave of absence
o Non-sanctioned fundraiser
o Gradebook compliance

You are entitled at this conference to representation by the St. Tammany Federation of Teachers and School Employees. You may contact them at 985-641-6477. If you choose not to be represented by the Federation. then you will be required to sign a Disclaimer Form at the time of the conference. If you are unable to attend this meeting, please contact me by Monday, June 12, 2017 by 3:00 PM at ___. If you do not contact me or attend the meeting as scheduled, the hearing will proceed.

Sincerely.

Amy T. Burns
Principal
Pitcher Junior High

Further, The CBA provided the following PROVISIONS COMMON TO ALL EMPLOYEES (to include Plaintiff):

### ARTICLE V - FAIR PRACTICES

Neither the Board nor the Federation shall unlawfully discriminate against any member of the Bargaining Unit for reasons of race, creed, religion, color, marital status, age, sex, national origin, disability, membership in the Federation or activity in furtherance of the Federation.

The parties acknowledge the desirability of active recruitment of employees to produce a professional staff that mirrors the racial makeup of the population of the Parish.

### ARTICLE IX - GRIEVANCE AND ARBITRATION PROCEDURE

All Sections

### ARTICLE XXV – WORKING CONDITIONS
**Section 25:04 - Confidentiality**

Confidential matters and private documents shall not be disclosed. Any employee who commits a breach of confidentiality shall be subject to discipline, up to and including discharge

**Section 25:09 - General Medical Examination**

(a) If the Board orders an employee to undergo a medical examination by its designated physician as a condition of continued employment or as a condition for return to employment from leave, the Board shall pay the costs of such examination. (b) The Board shall reimburse employees for any medical tests which the Board requires because of exposure to any contagious disease or infestation during the course and scope of employment.

### TEACHERS & OTHER CERTIFICATED EMPLOYEES

### ARTICLE III – DISCIPLINE
**Section 3:01 - Complaints Against Employee; Page 44**

(a) If an employee shall become the subject of a complaint: (1) Any discussion between the Administration and the employee regarding the allegation shall be conducted in a private setting; (2) Prior to any final action of a disciplinary nature being taken, a disciplinary conference shall be conducted between the administrator and the employee in accordance with the provisions of this Article; (3) The Administration shall, at all times, proceed in a manner which assumes the innocence of the employee until such time as the allegation is supported by evidence to the contrary; and (4) At any disciplinary conference, the employee may be accompanied by a Federation representative.

## ARTICLE V - INSTRUCTIONAL RESPONSIBILITIES

**Section 5:02 - Acceptance of New Students; Page 47**

(a) When a new student is enrolled in a school, prompt notice shall be provided to the teacher(s) scheduled to receive such new student. (b) Students shall be assigned to the teacher with the lowest student enrollment where scheduling circumstances permit or unless ability grouping is used in that school, the student has special needs that must be met by a particular teacher or special discipline problems require special assignments.

## ARTICLE X - WORKING CONDITIONS
**Section 10:20 - Professional Growth; Page 58**

The Board shall provide workshops and seminars to train employees in new technology which employees are required to learn for the performance of their job duties. Employees shall be reimbursed reasonable and customary travel expenses in accordance with Board policy when required by the Board to attend out-of-parish workshops and seminars.

**Section 10:25 - Relief from Nonprofessional Duties; Pages 58-59**

(c) Employees shall not be required to participate in any fund-raising activity when not on duty for the school. Employees shall not be required to devote classroom instructional time to fund-raising activities.

**Section 10:32 - Substitute Employees; Page 60**

   (a) Employees shall not be required to obtain their own substitutes. An employee requiring a substitute shall notify the principal, or his designee, and register his absence on the Automated Substitute Finder System. Notification and registration shall be accomplished as soon as possible but no later than 60 minutes prior to the start of the workday

**Section 10:33 - Teaching Assignments; Page 60**

   (b) The appropriate supervisor or principal shall make available to each employee a form designed by the School System on which the employee may state a request for assignment(s). Such forms may be placed in employees' mailboxes or made available to employees through some other reasonable means. (d) The principal or supervisor shall notify employees of their tentative teaching assignment, including tentative subject matter and grade level, for the following school year at least by the close of school. An employee shall be notified of a change in this tentative assignment as soon as feasible. Such notification may be conveyed in writing to the employee's last known home address or to the employee's school mailbox when school is in session. (f) Changes in an employee's assignment shall not be made for arbitrary or punitive reasons.

Employees violated Plaintiff's rights to due process by their conduct and by violating the CBA as follows:

### PROVISIONS COMMON TO ALL EMPLOYEES

## ARTICLE V - FAIR PRACTICES

Neither the Board nor the Federation shall unlawfully discriminate against any member of the Bargaining Unit for reasons of race, creed, religion, color, marital status, age, sex, national origin, disability, membership in the Federation or activity in furtherance of the Federation.

*Does not have a anti-discrimination neither an anti-harassment policy

The parties acknowledge the desirability of active recruitment of employees to produce a professional staff that mirrors the racial makeup of the population of the Parish.

*Student demographic changed due to Hurricane Katrina as STPSB experienced an increase in enrollment. This increase was a result of families relocating. Beyond recruitment, retaining professional staff that mirrors the racial makeup of the population should not only be desirable

## ARTICLE II - COMPENSATED LEAVE TIME

### Section 2:04 - Extended Sick Leave

Section 2:04 - Extended Sick Leave Employees shall be entitled to extended sick leave in accordance with Louisiana Revised Statute.

## ARTICLE XII - LEAVE WITHOUT PAY

### Section 12:01 - Family Leave

(a) An employee will be entitled to family and medical leave in accordance with the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., as amended from time to time. (b) The request for leave under this Section must be in writing on an application form as provided by the Department of Human Resources. The request for family leave shall be accompanied by a medical certification where appropriate. Medical certification shall be renewed and updated as the law may permit. Upon return from leave under this Section, the employee shall be returned to the school and assignment from which the leave was taken or to an equivalent position. (c) Medical benefits will be continued during the leave provided the employee pays that portion of the premium he is required to pay under this Agreement.

## ARTICLE VII - FEDERATION RIGHTS

### Section 7:03 – Distribution of Materials

(a) The Federation shall have the right to distribute Federation materials and literature to Bargaining Unit members. Distribution of such materials shall be made only by authorized representatives of the Federation. All materials distributed by the Federation shall bear thename of the Federation. No competing organization shall be extended this right.

## ARTICLE VIII - GENERAL PROVISIONS

2254503799   ENHANCE HHC   11:38:19 p.m.   07-06-2021   45 /53

### Section 8:04 - Distribution to New Employees

Each newly hired employee covered by this Collective Bargaining Agreement shall receive a copy of the Agreement from the Federation no later than five (5) working days after commencement of employment or 15 working days after the Agreement has been printed, whichever shall last occur.

### Section 8:06 - Form of Printed Agreement

The Agreement shall be printed and distributed to all members of the Bargaining Unit, all St. Tammany Parish School Administrators and all members of the Board in a form to be agreed upon by the Superintendent, or designee, and the Federation President, or designee. Sufficient copies shall be prepared so each party shall also receive a reserve supply equal to 20% of the total required by the first sentence of this Section.

### ARTICLE IX - GRIEVANCE AND ARBITRATION PROCEDURE

All Sections

### ARTICLE XXV – WORKING CONDITIONS

#### Section 25:04 - Confidentiality

Confidential matters and private documents shall not be disclosed. Any employee who commits a breach of confidentiality shall be subject to discipline, up to and including discharge

#### Section 25:09 - General Medical Examination

(a) If the Board orders an employee to undergo a medical examination by its designated physician as a condition of continued employment or as a condition for return to employment from leave, the Board shall pay the costs of such examination. (b) The Board shall reimburse employees for any medical tests which the Board requires because of exposure to any contagious disease or infestation during the course and scope of employment.

### TEACHERS & OTHER CERTIFICATED EMPLOYEES

### ARTICLE III – DISCIPLINE
#### Section 3:01 - Complaints Against Employee; Page 44

(a) If an employee shall become the subject of a complaint: (1) Any discussion between the Administration and the employee regarding the allegation shall be conducted in a private setting; (2) Prior to any final action of a disciplinary nature being taken, a disciplinary conference shall be conducted between the administrator and the employee in accordance with the provisions of this Article; (3) The Administration shall, at all times, proceed in a manner which assumes the innocence of the employee until such time as the allegation is supported by evidence to the contrary; and (4) At any disciplinary conference, the employee may be accompanied by a Federation representative.

2254503799          ENHANCE HHC                          11:38:57 p.m.      07-06-2021          46 /53

## ARTICLE V - INSTRUCTIONAL RESPONSIBILITIES

### Section 5:02 - Acceptance of New Students; Page 47

(a) When a new student is enrolled in a school, prompt notice shall be provided to the teacher(s) scheduled to receive such new student. (b) Students shall be assigned to the teacher with the lowest student enrollment where scheduling circumstances permit or unless ability grouping is used in that school, the student has special needs that must be met by a particular teacher or special discipline problems require special assignments.

## ARTICLE X - WORKING CONDITIONS

### Section 10:20 - Professional Growth; Page 58

The Board shall provide workshops and seminars to train employees in new technology which employees are required to learn for the performance of their job duties. Employees shall be reimbursed reasonable and customary travel expenses in accordance with Board policy when required by the Board to attend out-of-parish workshops and seminars.

### Section 10:25 - Relief from Nonprofessional Duties; Pages 58-59

(c) Employees shall not be required to participate in any fund-raising activity when not on duty for the school. Employees shall not be required to devote classroom instructional time to fund-raising activities.

### Section 10:32 - Substitute Employees; Page 60

(a) Employees shall not be required to obtain their own substitutes. An employee requiring a substitute shall notify the principal, or his designee, and register his absence on the Automated Substitute Finder System. Notification and registration shall be accomplished as soon as possible but no later than 60 minutes prior to the start of the workday

### Section 10:33 - Teaching Assignments; Page 60

(b) The appropriate supervisor or principal shall make available to each employee a form designed by the School System on which the employee may state a request for assignment(s). Such forms may be placed in employees' mailboxes or made available to employees through some other reasonable means. (d) The principal or supervisor shall notify employees of their tentative teaching assignment, including tentative subject matter and grade level, for the following school year at least by the close of school. An employee shall be notified of a change in this tentative assignment as soon as feasible. Such notification may be conveyed in writing to the employee's last known home address or to the employee's school mailbox when school is in session. (f) Changes in an employee's assignment shall not be made for arbitrary or punitive reasons.

To Defendant Folse, to Defendants, to the Board, and to the Federation, this may have been

business as usual and just another meeting.  For Plaintiff, Ms. Carter, this meeting was the most

important meeting in her life in that it would determine if she would continue to be employed. Although

very important, Plaintiff felt the mitigating circumstances, her positive evaluations, hard work,

documented and observed sickness, along with the lack of truth, documentation or supporting evidence

of the accusations, and allegations alleged to have occurred while Plaintiff was on leave, would be

adequate to clear any misunderstandings.  Plaintiff who had served for five year, who had expressed the

severeness of her illness and need for health insurance truly was invested in her employment and the

community in which she served.  Plaintiff unfortunately learned how haughty Defendant Folse,

Defendants, the Board, and their attorney's thoughts of "rejecting an employee who sought extended

sick leave" as they communicated the following (just a portion of Defendant's Position Statement to the

EEOC),

Ms. Carter acknowledges that she was restricted from all work during a period of time, yet asserts
some entitlement to a certain type of leave. Ms. Carter was employed as a classroom teacher. She is
subject to the Collective Bargaining Agreement between the St. Tammany Parish School Board and the
St. Tammany Federation of Teachers and School Employees. Ms. Carter sought extended sick leave,
which was rejected by the School System Administration. She was given the opportunity to apply for or
request leave without pay, but she did not do so. Her failure to submit a request for leave, left her in an
unauthorized leave status, which was one reason behind her termination. In addition to the
unauthorized leave status, Ms. Carter was also terminated for poor performance. The school principal,
Amy Burns, reached out to Ms. Carter on a number of occasions, to no avail, and Ms. Carter finally quit
contacting Ms. Burns at all. Her termination was based on her failure and refusal to do her job."

The feelings of rejection, unfairness and of being tossed aside after positive and successful years of
service – overwhelming for Plaintiff.  With her health and so much at risk, Plaintiff deserved better.

Defendants provided limited pre-hearing rights.  The allegations were vague, the letter was

addressed with the wrong address, and according to the CBA, Plaintiff should have had a conference

with the Administration prior to next step.  Nevertheless, another Just Cause hearing was scheduled.

However, the hearing was not arranged in a meaningful way or time as the Principal, Defendant Burns

was absent due to a funeral stated by Defendant Cosse. The individual who sought my termination was

absent. There was no documentation provided, no evidence, nothing – because it does not exist.

Plaintiff work history was great. The Plaintiff was denied her 14th Amendment Rights to due process and

equal protection.

Plaintiff asserts violation of the Fourteenth Amendment to the United States Constitution

(deprivation of property interest without due process of law); (2) violation of the CBA; (3) denial of

equal protection under the law, and (4) intentional infliction of emotional distress ("IIED").

Defendants discriminatorily denied Plaintiff her rights detailed within the CBA. During the Just

Cause hearing, Defendant Craddock took notes. However, Defendant stated Plaintiff would not be able

to obtain a copy. At the end of the hearing, Defendant Green stated to Defendant Cosse that

termination was a harsh consequence for the infraction considering Palintiff was not operating with full

faculty as a result of her serious illness. Defendant Green went on to say that Plaintiff failed to attend

the hearing originally scheduled as she stated she did not receive the certified letter prior to the hearing

date due to no one being at the residence during that time. Defendant Green asked Defendant Cosse

to consider those mitigating circumstances. The Board presented no evidence whatsoever and none

whatsoever to controvert the plaintiffs' testimony.

After exiting the conference room, an unknown male was waiting for Defendant Green to exit.

He stated that the Superintendent needed to speak with her regarding another important matter.

Defendant Green walked away with that gentleman. Plaintiff and Defendant Craddock went downstairs

and waited for Defendant Green to return. She did not. Plaintiff left the Board.

Two days later on June 28, Defendant called to inform Plaintiff of the decision. Plaintiff then

immediately called the Federation to speak with Defendant Green regarding the outcome. She was not

available. Plaintiff sent the Federation an email memorializing the call and Defendant Cosse's

statements. Plaintiff specifically asked the Federation, what would resigning mean for her? Plaintiff exclaimed that this is not right. Plaintiff asked the Federation, Defendant Green and Defendant Craddock, what are the next steps? No one responded.

The next day, Plaintiff called again and left a message. Defendant Green returned the call. During the conversation as Plaintiff explained what occurred and sought the answers to her questions, Defendant Green stated, "Let's play devil's advocate." If you didn't tell the Board when you were returning to work, how would they have known?" This was a total 180. Defendant was now in support of the board, as their was nothing Plaintiff could explain or state that Defendant received a legitimate response. The Federation had nothing to offer Plaintiff but "Devil's Advocate."

Plaintiff's union, the Federation, Defendants breached its duty of fair representation. The union's conduct was arbitrary, discriminatory, and in bad faith. Defendant's and Federation did not provide Palintiff with any post-termination advise, grievance documents, nothing. The representation of the Federation and Defendants was a sham, substantially inadequate and substantially unavailable. Defendants failed to represent.

Defendant Cosse mailed a certified letter falsely stating, "all just cause hearings" were conducted according to law. Defendant Cosse, Folse, Green, nor Craddock informed Plaintiff of here right to submit a grievance to appeal Defendant Folse determination. There were no post-hearing instructions or options. Nothing. Plaintiff was not aware of her rights as the Board and the Federation had never supplied the CBA or referenced it.

Plaintiff, Ms. Carter, at all times relevant to this action, was employed by the defendants as a Grade 7 Mathematics teacher, Journey to Careers Elective teacher, and Dance Team Sponsor, and was a member of the St. Tammany Federation of Teachers and School Employees, American Federation of Teachers, Louisiana Federation of Teachers (hereinafter known as the "Federation"); that the

"Defendants" and "Federation" entered into collective bargaining agreements covering the terms and conditions of employment for employees, such as Ms. Carter, by the "CBA".

Plaintiff, Ms. Carter, was the only African American core subject teacher in the main building at Pitcher. She was 1 out of 3 African American teachers. The other teachers were Chorus and P.E. which were located in separate buildings. Plaintiff asserts that her Math colleague during the same time in 2017, was pregnant. During her pregnancy, she began having complications. As a result, the Caucasian colleague left and was on an early unforeseeable leave. Co-workers witnessed Defendant Burns and the bookkeeper Jamie Ruth assisting this employee with her leave paperwork after several weeks having the baby, as it was observed, she returned to Pitcher with her baby as she was given the opportunity to complete the form necessary for leave.

Not much longer than that, Defendant Burns began receiving calls and visits from parents regarding inappropriate contact with students by one of the staff members. The staff member is the son of the SpEd Department Head who instructed the para-professional not to help Mrs. Carter. This employee was never disciplined, no just cause. Because of the numerous incidents and disregard, parents then took their complaint to the Sherriff's office. The employee Michael Williams was detained and taken away in handcuffs from Pitcher. The story was a news headline.

Plaintiff asserts that the complaint and meeting held with Defendant Burns in October 2016 only manifested itself more while Plaintiff was out on leave. No one offered to assist, none the less mention to Plaintiff Ms. Carter she was on an unauthorized leave. Again, don't help her – make her do it. The pregnant colleague was subject return the following school year as Plaintff. Defendant Burns relieved her of the Journey to Careers assignment and assigned that class to Plaintiff in addition to a new elective titled, "Into to Business Computing Application."

Plaintiff, Ms. Carter, believes the denial of her extended sick leave request, the interference in leave without pay identified as Family Medical Leave (FMLA), false allegations, sham just cause hearing, termination of her employment, denied Federation representation, the breach of contract, alleged misconduct to deny unemployment benefits, continued harassment and targeting of Plaintiff's children, continued denial of Plaintiff's support and engagement in her children's education while in St. Tammany Parish Public Schools, and the final removal of Plaintiff's children from the rolls of their respective schools were all discriminatory acts, intentional harassment, and continued retaliation as a result of Plaintiff's attempt to engage in protective activity during employment, to secure leave due to severe, chronic debilitating migraines. Both Plaintiff and her children have and had been victims of retaliation.

Defendant's terminated Plaintiff's employment on May 24, 2017 while Plaintiff was on protected leave. Defendant's records submitted to the Louisiana Workforce Commission show that Defendant's terminated Plaintiff on May 24, 2017. The record also implies Plaintiff's last day worked was May 24, 2017, which is false. Plaintiff received communication that her employment had been terminated July 5, 2017.

Additional assignment, no said replacement for Dance Team, relocating class room, all discriminatory, all retaliation, and All a part of Defendant's efforts to make Palintiff resign. When that did not manifest within time, a just cause hearing was scheduled. Without cause, Defendant's determined to further obtain Plaintiff's resignation, adding that if Plaintiff chose not to resign, they "the Board" would execute termination of Plaintiff's employment on July 5, 2017, in which they did.

Victim of retaliation as there are no charges and write-ups in Plaintiff's personnel file. The only negative document in file was the just cause in 2012, in which it's intent and actions thereafter is obvious and very similar here – disparate and egregious acts. These acts were an attempt to force Plaintiff to resign. That was not an option as Plaintiff had not violated any such board policy nor was

ever told or regarded as performing poorly. Plaintiff had a family, a family whose healthcare was dependent on her employment in which Defendant was very aware of as Plaintiff informed Defendant of her need for continued employment on two occasions: Personally to Defendant Principal Amy T. Burns in March 2017 and on July 5, 2017 to all Superintendent's and again to Defendant Burns.

Defendant's allegations of poor performance is disputed and refuted by Defendant's own admittance on a completed Jefferson Parish form which required verification of job performance, in which Defendant Lemane and the Board checked Plaintiff's job performance as Satisfactory.

Defendants allowed these actions, as well as continued in an attempt to make Plaintiff resign. When she did not, Defendants added to allegations suggesting Poor Performance and Misconduct in an attempt to block unemployment benefits. After administrative law judge hearing, the judgment was reversed in Plaintiff's favor.

Plaintiff was further discriminated against and retaliated against when she was not considered for the Sped Council Advisory Committee to represent son and other parents with children with IEP's and learning disabilities. The application was due November1. Defendant's, the board and Lemane returned application when they sent the letter the same day on or around December 19 when my children were sent home with letters stating that they would be removed from the rolls on December 19, 2019. Defendant Folse, Defendants also violated the McKinney Vento Act to continue to harass, retaliate and further their agenda to remove my children from the rolls and out of the parish.

STPSB bad faith efforts to try to run plaintiff off, inducing a resignation. All Defendants were indifferent to the violation of Plaintiff's rights. Plaintiff submits that as a result of Defendants' blatant willful act and/or act of wanton disregard in terminating her employment, for each and/or all of the reasons set forth in all Counts above hereinabove, all Defendants are liable to Plaintiff for all damages she sustained which are recoverable, including her monetary losses, an equal amount in

liquidated damages, interest on all sums due, reinstatement of employment, attorney fees and any costs

pursuant to 42 U.S.C. § 1988, other damages Plaintiff is entitled to.

Plaintiff desires a jury trial for her claims arising out of the actions of all defendants.

WHEREFORE, premises considered, Plaintiff, Erin Carter, prays that this matter be set

for trial, and for jury trial against all Defendants, and that there be judgment herein in her favor and

against Defendants the St. Tammany Parish School Board and the St. Tammany Federation of Teachers,

as well as Peter Jabbia, Michael Cosse, William "Trey" Folse, III, Aimee Lemane, Regina Sanford , Amy T.

Burns, Patricia Craddock, and Deborah Green individually and in their official capacity, awarding Plaintiff

back pay, front pay, lost benefits, compensation for emotional distress and anxiety, liquidated/punitive

damages, reinstatement of his employment, attorney fees, interest on all sums due, all costs pursuant to

42 U.S.C. § 1988, and all such other legal and equitable relief to which she may be entitled.


Date: June 06, 2021                            Respectfully submitted:


                                               BY:    Erin Carter, Pro se.
                                               220 S. Calvin Ave.
                                               Gonzales, LA  70737
                                               225-450-2877

## LAEDdb_Intake_Fax

| | |
|---|---|
| **From:** | NIPTfax@ao.uscourts.gov |
| **Sent:** | Wednesday, July 7, 2021 12:14 AM |
| **To:** | LAEDdb_Intake_Fax |
| **Subject:** | Fax Received from CSID: 2254503799 - Pages received: 107 |
| **Attachments:** | C23F5657-837A-4E8A-981D-24F98E4FCB15-13686-IF.pdf |

```
Pages Received    : 107
Time Received     : Wednesday, July 7, 2021 at 12:14:11 AM Central Daylight Time
Duration          : 3758
Remote CSID       : 2254503799
DID               : 5043108159
```